UNITED STATES BANKRUPTCY COURT  NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
                                                                :
In re                                                          :   Chapter 7
                                                                :
    Sebastian Wintermute,                   :
                                                                :   Case No. 09-17314 (AJG)
                                                                :
        Debtor.         :
                                                                :
-------------------------------------------------------
                                                                :
Titus Kana,                                                    :
                                                                :
                                                                :
        Plaintiff       :   Adv. Pro. No. 10-03237 (AJG)
                                                                :
        v.              :
                                                                :
Sebastian Wintermute,                                          :
                                                                :
        Defendant.      :
                                                                :
-------------------------------------------------------

**OPINION DENYING PLAINTIFF'S REQUEST TO EXCEPT CERTAIN
DEBTS FROM DISCHARGE UNDER 11 U.S.C. § 523(a)(2)(A)**

**APPEARANCES:**

TITUS KANA
*Pro Se* Plaintiff
10 Waterside Plaza, #10F
New York, NY 10010

GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
Attorneys for Defendant and Debtor
1501 Broadway, 22nd Floor
New York, NY 10036
    J. Ted Donovan, Esq.

**ARTHUR J. GONZALEZ**
**Chief United States Bankruptcy Judge**

Before the Court is the complaint (the "Complaint") filed by plaintiff Titus Kana ("Plaintiff") against Sebastian Wintermute ("Debtor" or "Defendant") seeking exception under section 523(a)(2)(A) of the Bankruptcy Code to the discharge of certain debts listed in the Debtor's Amended Schedule H.  As his First Affirmative Defense, Debtor alleges that Plaintiff fails to state any cause of action under either section 523 or section 727.[1]  (Answer ¶ 32.)  The Court must consider whether Plaintiff has alleged sufficient facts to constitute a finding of fraud under section 523(a)(2)(A) of the Bankruptcy Code.  If Plaintiff has failed to do so, the Court must deny Plaintiff's request to except the debts at issue from Debtor's discharge.

## I. Jurisdiction and Venue

The Court has subject matter jurisdiction over this adversary proceeding under sections 1334(a) and (b) and 157(a) and (b) of title 28 of the United States Code and under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.).  This is a core proceeding within the meaning of section 157(b)(2)(I) and (J) of title 28 of the United States Code.  Venue is proper before this Court pursuant to section 1409(a) of title 28 of the United States Code.

---

[1] The First Affirmative Defense is included in the Debtor's answer and refers to sections 523 and 727.  The answer alleges that the Complaint "fails to state any cause of action under either Section 523 or Section 727 of the Bankruptcy Code."  (Answer ¶ 32.)  The Plaintiff, however, did not raise section 727 in the letter that contained his initial request for a hearing, which the Court treated as the Complaint.  Since Plaintiff did not raise section 727 in the Complaint, the Court will not address that section in this opinion.

## II. Procedural History

On December 14, 2009, the Debtor filed a voluntary petition (the "Petition") under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"). On March 15, 2010, the Plaintiff filed a letter "request[ing] . . . [a] hearing pursuant to 11 U.S.C. [§] 523 that certain debts scheduled by the Debtor in Amended Schedule H not be discharged by reason of false pretenses, false representations, or actual fraud." The letter was entered on March 31, 2010 and treated by the Court as the Complaint. On April 28, 2010, Debtor filed his answer to the Complaint, which was entered on the same date.[2]

On May 5, 2010, Plaintiff, in a subsequent filing, attached to the letter filed on March 15, 2010 both a cover sheet stating his cause of action under section 523 and the Dissolution and Transfer Agreement entered into between Plaintiff and Debtor, which both parties subsequently introduced as their exhibits. (Pl. Ex. P; Debtor's Exs. 2, 3.) In his cover sheet, Plaintiff specified his cause of action as follows: "Pursuant to 11 U[.]S[.]C[.] [§] 523 that certain debts scheduled by the defendant (debtor) in [S]chedule H not be discharged by reason of false pretense, false representations, or actual fraud." Debtor did not file an answer to the letter and attachments that were subsequently filed. Therefore, the Court will consider as the Complaint both the letter filed on March 15, 2010, and the filing of the letter with its attachments, the latter being subsequently filed on May 5, 2010. On August 5, 2010, this Court held a trial to hear the parties.

---

[2] The Court will only address the section 523 claim. As stated above, Plaintiff did not raise a section 727 claim in the Complaint. *See supra*, note 1.

3

### III. Factual Background

Plaintiff is a professional photographer with extensive experience retouching images. Debtor has experience as a website designer. Both Plaintiff and Debtor worked from a studio Plaintiff had rented through his photography business at 5 West 19th Street, New York, NY 10011. In November 2006, Plaintiff and Debtor formed "Preserve Your Past, LLC" ("PYP LLC"), a limited liability company providing image restoration services. (Debtor's Ex. 1.)

In January 2007, Plaintiff and Debtor both signed a Promissory Note ("Chase Note") with JPMorgan Chase Bank ("Chase Bank") for twenty-five thousand dollars ($25,000) evidencing a Small Business Administration Business Line of Credit. (Pl.'s Ex. C.) In March 2007, Plaintiff alleges that his wife, Jayne Cunniff Kana, provided valuable marketing services for the business (Compl. ¶ 7.), which Debtor denies (Answer ¶ 11). In May 2007, PYP LLC acquired a high-end scanner pursuant to a multi-year lease in which both Plaintiff and Debtor executed personal guarantees. (Pl.'s Ex. F.) While PYP LLC initially generated revenue (Pl.'s Ex. A), sales subsequently declined (Compl. ¶ 9).

In May 2008, Plaintiff and Debtor began to disagree on how to run the business. Debtor refused to sublet a portion of the business space to meet rent obligations and preferred to work from home, having Plaintiff go to Debtor's residence in order to work. (Compl. ¶ 10.) Upon Debtor's request, Plaintiff offered to sell his membership in PYP LLC to Debtor for one hundred thousand dollars ($100,000), which Debtor rejected. (Compl. ¶ 11.)

Due to reasons that Plaintiff and Debtor dispute, the lease of the business premises was subsequently terminated and the security deposit was forfeited. (Compl. ¶ 13; Answer ¶ 17.)

In June 2008, Plaintiff received a letter from the New York Secretary of State informing him that PYP LLC had been dissolved. (Compl. ¶ 16.) Plaintiff avers that the Debtor "went behind [his] back, without [his] knowledge or consent, to destroy the business" (*Id.*), which Debtor denies (Answer ¶ 19). At about the same time, Plaintiff learned that Debtor had formed a new corporation named "Sebastian Wintermute, Inc." (Compl. ¶ 16; Debtor's Ex. 5.)

In a Dissolution Agreement effective July 1, 2008, Plaintiff and Debtor agreed to dissolve the company. (Pl.'s Ex. P; Debtor's Ex. 2.) According to the Dissolution Agreement, "[i]n consideration for Kana not contesting such unilateral Dissolution Event, Wintermute agrees to assume all debts and liabilities of the Company and continue operating the business of the Company through another entity . . . ." (Pl.'s Ex. P at 1; Debtor's Ex. 2 at 1). The terms of the Dissolution Agreement were subsequently amended in the Transfer Agreement dated August 7, 2008 in which the terms of Article 3.3(b) entitled "Actions by Wintermute on the Closing Date" were made to reflect Debtor's inability to pay. (Pl.'s Ex. P at 3; Debtor's Ex. 2 at 3.)

On August 18, 2008, Debtor amended the name of his new corporation to "Preserve Your Past, Inc." ("PYP, Inc."). (Pl.'s Ex. 6.)

On December 14, 2009, Debtor, as indicated in the Procedural History above, filed a Chapter 7 Petition under the Bankruptcy Code. On June 7, 2010, this Court issued

5

Discharge of Debtor, excepting from discharge "[d]ebts that the bankruptcy court specifically . . . will decide in this bankruptcy case . . . ."  (Order ¶ h.)

## IV. Discussion

The Court must consider whether Plaintiff has alleged sufficient facts to constitute a finding of fraud under section 523(a)(2)(A) of the Bankruptcy Code.  If Plaintiff has failed to do so, the Court must deny the request to except his debt from Debtor's discharge.

### A. Establishing Nondischargeability under Section 523(a)(2)(A)

Section 523 of the Bankruptcy Code enumerates a number of exceptions to the general grant of discharge provided by section 727 of the Bankruptcy Code.  Among those exceptions, section 523(a)(2)(A) of the Bankruptcy Code provides that –

> (a) A discharge under sections 727 . . . of this title does not discharge an individual debtor from any debt –
> . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition.

11 U.S.C. § 523(a)(2)(A).

The statutory language "false pretenses, a false representation, or actual fraud" cannot be read as one unitary cause of action.  Rather, the use of the disjunctive "or" evidences that Congress intended to deny a discharge under any one of the three types of mischief referenced.  *Lubit v. Chase (In re Chase)*, 372 B.R. 125, 128 (Bankr. S.D.N.Y. 2007); *Sandak v. Dobrayel (In re Dobrayel)*, 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2002)

6

(citing *In re Soliz*, 201 B.R. 363, 369 (Bankr. S.D.N.Y. 1996)). The plaintiff bears the burden of establishing each element of the statute by a preponderance of the evidence. *Grogan v. Garner*, 489 U.S. 279, 291 (1991).

Exceptions to discharge are construed narrowly and in favor of the debtor in order to effectuate the Bankruptcy Code's objective of providing "the debtor 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Fleet Credit Card Servs. v. Macias (In re Macias)*, 324 B.R. 181, 187 (Bankr. E.D.N.Y. 2004) (quoting *Cazenovia Coll. v. Renshaw (In re Renshaw)*, 222 F.3d 82, 86 (2d Cir. 2000)).

**B. Actual Fraud under Section 523(a)(2)(A)**

"To be actionable, the debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which may exist without imputation of bad faith or immorality) is insufficient." *Charell v. Gonzalez (In re Gonzalez)*, 241 B.R. 67, 71 (Bankr. S.D.N.Y. 1999). To succeed, Plaintiff must prove the following five elements:

1. the debtor made a false representation;
2. at the time the representation was made, the debtor knew it was false;
3. the debtor made the representation with the intention of deceiving the creditor;
4. the creditor justifiably relied on the representation; and
5. the creditor sustained loss or damage as the proximate consequence of the false, material misrepresentation.

*See, e.g.*, *Chase Manhattan Bank, USA, N.A. v. Giuffrida (In re Giuffrida)*, 302 B.R. 119, 123 (Bankr. E.D.N.Y. 2003).

The Court will discuss each element in turn as they apply to the 11 points[3] Plaintiff enumerated during closing arguments to support his allegations of fraud. Specifically, Plaintiff alleged that the Debtor:

a. took control of marketing from Plaintiff and removed Plaintiff's wife from marketing duties, resulting in the immediate decline in revenue;

b. refused to sublet office space to reduce rent;

c. refused to move to a smaller, less costly commercial space and was willing to work only in his residence and have Plaintiff go to his residence in order to work;

d. refused to consider paying fair market value for PYP LLC;

e. started a competing business, Sebastian Wintermute, Inc., while PYP LLC was still in existence without notice to Plaintiff;

f. resigned from PYP LLC and formally denied all responsibility for its debts and obligations;

g. dissolved PYP LLC without Plaintiff's knowledge or consent and without discussing any subsequent liability for the personal guarantees on the Chase Note;

h. failed to disclose that Debtor had substantial debt when he induced Plaintiff to transfer all his assets in the business, claiming Debtor had assets and available credit of forty-one thousand dollars ($41,000);

i. failed to seek substitute financing to satisfy joint debts as agreed under the Dissolution and Transfer Agreement, other than one documented attempt, and used the Chase line of credit obtained for PYP LLC for Debtor's own purposes after its dissolution;

---

[3] Although Plaintiff asserts 15 points supporting his allegations of fraud, they have been condensed in the Opinion to avoid repetition.

8

    j.   failed to use PYP, Inc. to pay off his debts; and

    k.   failed to list assets that might have been put on auction.

**1. Whether Debtor Made a False Representation**

A representation may be express or implied. *See Aldus Green Co. v. Mitchell (In re Mitchell)*, 227 B.R. 45, 50 (Bankr. S.D.N.Y. 1998). At trial, Plaintiff clearly stated that Debtor did not make any express representation that Debtor would not dissolve the business. Instead, Plaintiff merely asserts that by filing for dissolution, Debtor "automatically triggered the guarantees of the … loan and the scanner lease but effectively eliminated the source of income needed to pay off those loans." Plaintiff also argues that his decision to transfer the business to Debtor was based on: Debtor's Business Plan (Pl.'s Ex. O); Plaintiff's *knowledge* that Debtor could do the restoration work; Debtor's decision to move the business into his apartment with low rent; Debtor's agreement to obtain financing so that the Chase Note and scanner lease would be paid off and that Debtor would assume all the debt; Plaintiff's *belief* that Debtor could satisfy the obligations; Plaintiff's *belief* that Debtor did not have substantial personal debt; and Plaintiff's *belief* that Debtor could easily obtain financing because both Plaintiff and Debtor could easily obtain a loan from Chase the year before. Thus, nowhere in his testimony did Plaintiff assert that Debtor made an express representation regarding the dissolution of the business upon which Plaintiff relied.

Regarding the Business Plan, Plaintiff stated on cross-examination that he did not ask Debtor about his obligations at that time because Plaintiff believed Debtor did not have any debts. During Plaintiff's cross-examination of Debtor, Debtor testified that the Business Plan did not contain the amount of personal debt he owed in July 2008. Debtor

9

clarified that the Business Plan was a rough draft and that it was an application for credit for the business, not an application for a personal loan. Thus, it is clear that Debtor did not make any express representation regarding his personal debts.

On cross-examination of Debtor, Plaintiff sought to establish fraud by focusing on Debtor's preference and continued payment of his fifteen thousand dollar ($15,000) loan from Signature Bank over the Chase Note that Plaintiff and Debtor both personally guaranteed. Specifically, on cross-examination, Debtor testified that he chose to pay the Signature Bank loan in its entirety and chose to pay the Chase Note only as long as he could. Debtor, however, did not expressly represent to Plaintiff that he would pay the Chase Note over subsequent loans.

Representation can also be implied. *See In re Mitchell*, 227 B.R. at 50. "A fraudulent promise requires proof that at the time the debtor made it he did not intend to perform as promised." *Seepes v. Schwartz (In re Schwartz)*, 45 B.R. 354, 357 (Bankr. S.D.N.Y. 1985) (citing *In re Kiernan*, 17 B.R. 362, 365 (Bankr. S.D.N.Y. 1982). "Fraud cannot be based on statements or promises to perform in the future, absent proof of scienter, because … '[a] mere promise to be executed in the future is not sufficient to make a debt nondischargeable . . . .'" *In re Schwartz*, 45 B.R. at 357 (quoting 3 *Collier on Bankruptcy, § 523.08*, at 523-44 to 45 (L. King 15th ed. 1984). "As a rule, one who undertakes to perform an obligation, such as to pay a debt, impliedly represents that he intends to perform . . . ." *In re Mitchell*, 227 B.R. at 50. (citations omitted). Regarding the Business Plan, Debtor did not make any implied representation about his personal debts because Debtor did not undertake any obligation to perform under the Business

10

Plan. As stated above, Debtor clarified that the Business Plan was a rough draft and that it was a credit application for the business.

Regarding the preference of the Signature Bank loan over the Chase Note, Debtor did not represent to Plaintiff that he would pay off the Chase Note *before* other loans. Debtor merely obliged himself to pay off the Chase Note without any reference to subsequent loans. By entering into the Dissolution and Transfer Agreement, however, Debtor did obligate himself to obtain financing so that the Chase Note and scanner lease would be paid off and that Debtor would assume all the debt. Having entered into the Dissolution and Transfer Agreement, Debtor expressly represented that he would obtain financing. However, in order to satisfy the first element of actual fraud, Plaintiff must show that Debtor did not *intend* to comply with his representation of obtaining financing to satisfy the Chase Note and scanner lease.

When a debtor makes a representation that is a promise, his intent to fulfill the promise at the time the representation is made determines whether such representation is truthful. The first element of actual fraud thus overlaps with the second. As stated in *Weiss v. Alicea* (*In re Alicea*), 230 B.R. 492, 501 (Bankr. S.D.N.Y. 1999):

> The test [for fraudulent intent] may be stated as follows. If, at the time he made his promise, the debtor did not intend to perform, then he has made a false representation (false as to his intent) and the debt that arose as a result thereof is not dischargeable (if the other elements of [section] 523(a)(2)(A) are met). *If he did so intend at the time he made the promise, but subsequently decided that he could not or would not so perform, then his initial representation was not false when made.*

*Id.* at 501 (citing *Palmacci v. Umpierrez*, 121 F.3d 781, 787 (1st Cir.1997)) (emphasis supplied).

During trial, Plaintiff stated that in previous conversations with Debtor, the latter did not identify any other bank, source of credit, or loan from which Debtor planned to

obtain financing, nor did he provide information in discovery about credit applications. As a result, Plaintiff *concluded* that Debtor applied for an unstated amount of credit only once and that Debtor had lied to Plaintiff repeatedly about his attempts at refinancing the debt. Plaintiff also infers fraud based on Debtor's use of the original Chase line of credit that they had established through PYP LLC subsequent to its dissolution. (Pl.'s Ex. S.) Plaintiff, however, must assert more than mere conclusions about Debtor's intent. Without more, Plaintiff fails to convince the Court that Debtor did not intend to comply with his representation. Rather, as more fully discussed below, Debtor attempted to refinance the Chase Note twice and had tried his best to apply for other business loans and lines of credit, subsequently receiving a fifteen thousand dollar ($15,000) loan from Signature Bank. While Debtor represented that he would obtain more financing, the Court does not find a lack of intent to fulfill this promise. Thus, Plaintiff has failed to satisfy the first element for a finding of actual fraud.

**2. Whether Debtor Knew the Representation was False at the Time it was Made**

"The second element requires that the representation be made with knowledge that it was false at the time it was made." *FTC v. Duggan (In re Duggan)*, 169 B.R. 318, 323 (Bankr. E.D.N.Y. 1994.) "If the objection to dischargeability is based upon an unperformed promise, the proponent must show that the debtor did not intend to perform or had no reasonable basis to believe that she could perform when she made the promise." *In re Mitchell*, 227 B.R. at 51.

The Court must consider the knowledge and experience of the debtor to determine whether the debtor knew the representation was false at the time it was made. *In re Duggan*, 169 B.R. at 324. The debtor's "actual state of mind . . . at the time the charges

12

were incurred" *MBNA Am. v. Parkhurst (In re Parkhurst)*, 202 B.R. 816, 822 (Bankr. N.D.N.Y. 1996), must be considered, and "[t]he debtor's failure to repay, standing alone, does not establish a lack of intent to repay when the debt was incurred." *In re Macias*, 234 B.R. at 188. "A false representation made under circumstances where a debtor should have known of the falsity is one made with reckless disregard for the truth, and this satisfies the knowledge requirement." *In re Duggan*, 169 B.R. at 324.

In order to satisfy the second element, Plaintiff must show by a preponderance of evidence that Debtor did not intend to nor did he have any reasonable basis to believe that he could obtain financing to satisfy the Chase Note and scanner lease obligations. Plaintiff avers that Debtor did not produce evidence that he exerted any effort to obtain financing other than a letter of complaint to Chase (Pl.'s Ex. Q), but Debtor testified on cross-examination that "due to the credit crunch", financial institutions and credit unions were not extending loans. On direct examination, Debtor testified that he had tried to refinance the Chase Note twice and had tried his best to apply for other business loans and lines of credit. Debtor also testified that he had applied for a twenty-five thousand dollar ($25,000) to fifty thousand dollar ($50,000) business loan from Signature Bank, but he received only fifteen thousand dollars ($15,000), which he used to pay outstanding bills. To show that Debtor's attempts at obtaining financing were insufficient, Plaintiff sought to emphasize that Debtor did not apply for any loan from family members nor did Debtor offer any portion of Sebastian Wintermute, Inc. to a venture capital firm. Debtor, however, made no express representation regarding particular sources of financing, nor did the Dissolution and Transfer Agreement make any reference to the specific steps Debtor must undertake to secure financing. (Pl.'s Ex. P; Debtor's Exs. 2, 3.) As

13

indicated above, Debtor expressly represented that he would obtain financing to pay off the Chase Note and scanner lease. He did not, however, represent that he would exhaust all sources of financing.

Plaintiff was unable to show Debtor's lack of intent to repay when the Dissolution and Transfer Agreement was executed. Plaintiff asserts "[t]he debtor did not identify any other bank or source of credit or loan when [he] spoke with [Debtor] nor did [Debtor] provide information in discovery about credit applications." On Debtor's cross-examination of Plaintiff, it was clear that Plaintiff was put on notice regarding Debtor's inability to pay. Specifically, Plaintiff admitted that the Transfer Agreement was executed in order to amend the original purchase price of twenty-nine thousand ($29,000) contained in Article 3.3 of the Dissolution Agreement (Pl.'s Ex. P) because Debtor had informed Plaintiff that he did not have the funds to pay the purchase price. In addition, assuming *arguendo* that by entering into the Dissolution and Transfer Agreement, Debtor recklessly disregarded his inability to repay Plaintiff, Plaintiff must still demonstrate the third element discussed below, requiring intent to deceive.

**3. Whether Debtor Made the Representation with the Intent to Deceive the Creditor**

The creditor must show the debtor's intent to deceive at the time the debt was created. *Scheidelman v. Henderson (In re Henderson)*, 423 B.R. 598, 621 (Bankr. N.D.N.Y. 2010). "It is insufficient to show that a debtor left unfulfilled a prior representation or promise." *Dawley v. Gould (In re Gould)*, 73 B.R. 225, 227 (Bankr. N.D.N.Y. 1987). "Intent to deceive will be inferred where a debtor makes a false representation and the debtor knows or should know that the statement will induce another to act." *In re Duggan*, 169 B.R. at 324. Courts use a "totality of circumstances"

14

approach to determine a debtor's subjective intent because "intent to defraud is rarely proven by direct evidence". *In re Macias*, 324 B.R. at 192 (quoting *Am. Express Centurion Bank v. Truong (In re Truong)*, 271 B.R. 742, 745 (Bankr. D. Conn. 2002)).

Those same circumstances relevant to the second element are considered when determining intent to deceive. *In re Truong*, 324 B.R. at 192 (citing *Colonial Nat'l Bank v. Carrier (In re Carrier)*, 181 B.R. 742, 747 (Bankr. S.D.N.Y. 1995)). As indicated under the second element, it was clear on cross-examination that Plaintiff was put on notice regarding Debtor's inability to pay. After the original Dissolution Agreement was negotiated on or about July 1, 2008, and after the July 31, 2008 Closing Date designated on the contract had passed (Pl.'s Ex. P, Art. 3.2(e); Debtor's Ex. 2, Art. 3.2(e)), the Dissolution Agreement was modified to reflect Debtor's inability to satisfy the $29,000 purchase price. More specifically, the nine thousand dollar ($9,000) component of the purchase price to be paid directly to Plaintiff was lowered to two thousand five hundred dollars ($2,500) in cash.

During closing arguments, Plaintiff asserts that Debtor failed to disclose his substantial debt when he induced Plaintiff to transfer all his assets in the business. To illustrate Debtor's fraudulent intent, Plaintiff disputes authorship of the unsigned June 2, 2008 letter from PYP LLC to Kew Management Corporation, the lessor, informing the lessor of plans to dissolve the company (Debtor's Ex. 7). Plaintiff argues that Debtor himself wrote the letter to Kew Management, because Plaintiff could not have written the letter absent knowledge of any plans of dissolution. Assuming *arguendo* that Plaintiff's assertions are factually correct, authorship of the letter does not prove fraudulent intent with respect to Debtor's representation to perform under the Dissolution and Transfer

15

Agreement. Mere allegations are insufficient and Plaintiff "must make out a prima facie case as to each element in order to be entitled to relief." *In re Macias*, 324 B.R. at 187. Rather than disputing mere authorship, Plaintiff must show that "[D]ebtor entered into the contract with the intent of never complying with the terms . . . ." *In re Henderson*, 423 B.R. at 622 (discussing generally two ways contractor-debtors prove fraud or misrepresentation). Plaintiff has thus failed to satisfy the third element required for a finding of fraud under section 523(a)(2)(A).

### 4. Whether the Creditor Justifiably Relied on the Representation

Plaintiff must show "justifiable reliance" on the debtor's misrepresentation. *In re Chase*, 372 B.R. at 130. A creditor "is 'required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Field v. Mans*, 516 U.S. 59, 71 (quoting Restatement (Second) of Torts § 541 (1976)). As with the discussion on the third element above, Plaintiff was aware of Debtor's inability to pay the purchase price as originally agreed under the Dissolution Agreement. (Pl.'s Ex. P; Debtor's Ex. 2.) Plaintiff cannot be said to have justifiably relied on Debtor's representation to perform under the Dissolution Agreement as he was already aware that Debtor did not have sufficient funds. Plaintiff has thus failed to satisfy the fourth element required for a finding of actual fraud under section 523(a)(2)(A).

### 5. Whether the Creditor Sustained Loss or Damage as the Proximate Consequence of the False Representations

Plaintiff must establish that he was damaged as a result of the debtor's false representation. *See, e.g., In re Chase*, 372 B.R. at 130. Based on Plaintiff's testimony,

on or about April 22, 2009, Debtor returned to Plaintiff the high-end scanner subject to a lease from Balboa Capital (Pl.'s Ex. F). Since then Plaintiff has made all lease payments. As a result, he has full use and possession of the scanner and is not precluded from pursuing several options with regard to the lease, such as terminating the lease and surrendering the scanner to the lessor.

Although Plaintiff did not suffer harm as to use of the scanner, Plaintiff may rightly be said to have suffered pecuniary damage due to Debtor's default on the Chase Note. Plaintiff testified that in May 2009, he was contacted by a representative of Chase Bank and since May 18, 2009, has been paying the Chase Note. As discussed in the first element above, however, Plaintiff has failed to prove any false representation by the Debtor with the requisite intent that would proximately cause Plaintiff's pecuniary damage.

In sum, Plaintiff failed to prove the five elements for a finding of fraud: that Debtor falsely represented he would obtain financing to satisfy the Chase Note and scanner lease, that Debtor knew such representation was false at the time it was made, that the Debtor made the representation with intent to deceive Plaintiff, that Plaintiff justifiably relied on Debtor's representation, and that Plaintiff sustained pecuniary damage as the proximate consequence of Debtor's false representation.

### C. False Pretenses under Section 523(a)(2)(A)

Under section 523(a)(2)(A), the term "false pretenses" is defined as "conscious deceptive or misleading conduct calculated to obtain, or deprive, another of property." *Gentry v. Kovler (In re Kovler)*, 249 B.R. 238, 261 (Bankr. S.D.N.Y. 2000). Such

17

conduct includes "any scam, scheme, subterfuge, artifice, deceit or chicane in the accomplishment of an unlawful objective." *Id.*

In order to establish that a debt is nondischargeable as a debt for money obtained by false pretenses, the plaintiff must establish (1) an implied misrepresentation or conduct by the defendant; (2) promoted knowingly and willingly by the defendant; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiff; (4) which wrongfully induced the plaintiff to advance money, property, or credit to the defendant. *In re Chase*, 372 B.R. at 128 (citing *In re Dobrayel*, 287 B.R. at 12).

Here, actions of debtor do not evidence a conscious orchestration of deceptive or misleading conduct. As discussed in the "actual fraud" prong above, Plaintiff did not present evidence tending to support a finding that Debtor designed a false impression. Plaintiff was unable to show that Debtor did not intend to comply with his representation of obtaining financing to satisfy the Chase Note and scanner lease. Thus, the debt cannot be exempted from discharge under the "false pretenses" prong of section 523(a)(2)(A).

**D. False Representation under Section 523(a)(2)(A)**

The Court can find a false representation if Plaintiff presents proof that Debtor (1) made a false or misleading statement; (2) with the intent to deceive; and (3) in order for the plaintiff to turn over money or property to the defendant. *In re Chase,* 372 B.R. at 129 (citing *In re Dobrayel,* 287 B.R. at 12).

A false representation differs from a false pretense in that the former involves expressed, either oral or written, misrepresentations, while the latter involves implied

misrepresentations. *Bobilya Chrysler v. Gross (In re Gross)*, 175 B.R. 277, 283 (Bankr. N.D.Ind. 1994).

As discussed in the "actual fraud" prong above, Plaintiff has not presented any evidence that would support a finding of an express representation with the requisite intent to deceive. The debt cannot be excepted from discharge under the "false representation" prong of section 523(a)(2)(A).

### V. Conclusion

For the foregoing reasons, the Plaintiff's request to except his debt from discharge under section 523(a)(2)(A) of the Bankruptcy Code is **DENIED**.

Counsel for Debtor is to settle an order consistent with this opinion.

Dated: New York, New York
        August 25, 2010

                          s/Arthur J. Gonzalez
                          ARTHUR J. GONZALEZ
                          CHIEF UNITED STATES BANKRUPTCY JUDGE